# IN RE SHELDON.

PATENTS; CLAIMS; PATENTABILITY.

A decision of the Commissioner of Patents rejecting three claims of an applicant for a patent for improvements in turning lathes on references

to two patents, one for a drill and one for a lathe, was *reversed* as to one of the claims, on the ground that, as to the drill patent, the functions of such a device are different from those of a lathe, and also because fundamental differences existed in the structures of the two devices, while, as to the other patent, applicant had produced a much lighter and simpler device, dispensing with the guide bar of the old construction, and had embodied an idea never before given form and marking an advance in the art; but was *affirmed* as to the other two claims, on the ground that one of them presented nothing patentable and the other was too broad.

No. 456.   Patent Appeals.   Submitted March 11, 1908.   Decided April 7, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents, rejecting three claims of an applicant for a patent.
*Affirmed in part and reversed in part.*

The facts are stated in the opinion.

*Mr. A Miller Belfield, Mr. L. S. Bacon,* and *Mr. Joseph H. Milans* for the appellant.

*Mr. Webster S. Ruckman* for the Commissioner of Patents.

Mr. Justice ROBB delivered the opinion of the Court:

The case brings into review the decision of the Commissioner of Patents refusing to allow three claims for patent on certain alleged improvements in turning lathes, the ground for the decision being that, in view of the prior act, the claims do not involve patentable novelty.   The claims are as follows:

"1.   A lathe comprising a pair of uprights and a bed consisting of a couple of metallic bars or rods arranged one above the other, said sections having their ends embedded in the uprights, substantially as described.

"2.   A lathe comprising a pair of uprights and a bed consisting of a couple of sections of shafting arranged one above the other, said sections having their ends cast into said uprights, substantially as described."

"5. A lathe comprising a pair of uprights and a pair of bars or rods arranged one above the other and secured at their ends to said uprights, substantially as described."

The references, upon which the Commissioner rejected the above claims, are:

Post, December 18, 1877, No. 198,211.

British patent to Trueman, No. 22,014; December 16, 1891.

In the old construction, the bars forming the ways for the tool carriage and foot stock are arranged in a horizontal plane, and the clamping screws, which hold the carriage and foot stock, pass down through the opening between the bars.

In the construction described in the claims of the issue the bed consists of two uprights and two bars on rods connecting said uprights and arranged horizontally and one above the other instead of in a horizontal plane, and taking the place of the shears or ways in the ordinary lathe.

The Commissioner has allowed appellant, Edgar H. Sheldon, two claims covering the specific structure of his carriage, but has denied him the claims which give utility and value to that structure. Let us consider the reference which impelled the Commissioner to such a conclusion. The British patent to Trueman, which we will first consider, covers a drill the function of which is far different from that of a lathe, and in the development of which different considerations necessarily would be involved. Whilst it is true that there are parts of the two devices which are similar, it is equally true that the purposes and uses of those parts are essentially different. The lathe operates in a horizontal, the drill in a vertical, plane. In a lathe absolutely accurate alinement is essential, since the material operated upon rotates laterally against the cutting tool, which is held by the operator and supported by the rest or carriage. To insure this accuracy of alinement, strength and rigidity of the parts are necessary. In a drill there is very little tendency towards lateral vibration, consequently there is no necessity to prevent it by a specially adapted structure. In the British patent we find two vertical bars arranged one behind the other and supporting and separating the drill and work table, but anchored only at the

bottom ends. It is apparent that many and radical changes would be necessary to transform this drill into the lathe of the issue, and it is a fact that ten years elapsed between the granting of the patent to Trueman and the production of applicant's device. In view of the remoteness of the arts and the fundamental differences in the structures of the two devices, we think it would violate the spirit of the patent laws to rule that the two vertically arranged bars in the Trueman drill anticipated the horizontally placed bars of the lathe of the issue, the function of each being different.

The Post patent issued more than thirty years ago is cited as an example of the ordinary turning lathe. Post's device contains a heavy metallic base or bed having a slot cut longitudinally therethrough to form the ways or shears through which the projection of the head and tail blocks and rest pass and move back and forth. There is a tube above the bed, but its function is to guide the head and tail blocks and rest, and not to form any part of the ways or shears. In appellant's device he has entirely dispensed with this guide bar by so constructing his shears or ways that they perform all the functions of both the bed and guide bar of the old construction. He has produced a much simpler and a much lighter device. It is not contended by either of the three tribunals of the Patent Office that his lathe is not an improvement over the wider, heavier, and necessarily more expensive lathe of the prior art; neither is it contended that the idea which it embodies was ever before given form. It is much easier to follow than to lead, and it is easier to accept a result than bring it about.

We think appellant's lathe marks an advance in the art, that its construction involved invention, and that it should be protected by patent by the allowance of his first claim. We agree with the Commissioner that there is nothing patentable in the idea of *casting* the ends of the crossbars into the uprights, and we also find that claim No. 5 is too broad.

The decision of the Commissioner is affirmed as to claims Nos. 2 and 5, and reversed as to claim No. 1.

The clerk of the court will certify this opinion and the pro-
ceedings in this court to the Commissioner of Patents, according
to law.                    *Affirmed in part and reversed in part.*